JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} The court found defendant-appellant, Jason McKenzie, guilty of aggravated robbery for his part in the armed robbery of a motorist. The sole assignment of error on appeal is that the court's judgment of conviction is against the manifest weight of the evidence. We find no error and affirm.
 I {¶ 2} The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten
(1986), 33 Ohio App.3d 339, 340. The use of the word "manifest" means that the trier of fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest."State v. Antill (1964), 176 Ohio St. 61, 67.
 II *Page 4 {¶ 3} The victim testified that he had been laundering clothes at a laundromat when he received a cell phone call from a friend who asked him for a ride. While on his way, he called the friend's number and received directions from an unidentified male at that number. As he drove through neighborhood streets trying to find the correct location, three males approached and, calling his friend by her name, asked if he was looking for her. He replied affirmatively and one of the males pointed to a house. The victim backed his car down the street and parked alongside the curb. At that point, the three males approached him with a gun drawn and said "[y]ou know what it is." One of the males, whom the victim later identified as McKenzie, said, "[g]ive it up." Another male, later identified as Antwon Palmer, reached into an open window of the car and shut it off. McKenzie took the victim's cell phone and $10. The victim exited the car and fled down the street, begging the males not to shoot him.
 {¶ 4} The victim found a payphone and called the police. As he spoke with the emergency operator, a police car happened upon the victim's location and the officers offered their assistance. The victim entered the police car and accompanied the officers as they patroled the area. Within minutes they heard a dispatch stating that another zone car had located and was following a car matching the description of the victim's car. They met up with the other police car and the victim identified the car being followed by the other police car as his own. The police stopped the car and the victim confirmed his ownership of the *Page 5 
car by accurately stating that his wallet could be found in the glove compartment of the car. There were two males in the car: McKenzie and Palmer.
 {¶ 5} Palmer pleaded guilty to a delinquency complaint in the juvenile division and agreed to testify for the state in exchange for receiving probation. He said that he, McKenzie, and a friend named Deon were standing on the street when the victim pulled up. Deon gave the other two a "look" as he directed the victim down the street to a different house. By directing the victim to the wrong house and giving both McKenzie and Palmer a knowing "look," Palmer understood that they were going to rob the victim. Deon pulled out a gun and they robbed the victim. Palmer said he and McKenzie left in the victim's car. The back seat of the car contained some clothes in a laundry basket, and they threw those clothes out the window as they drove. The police stopped them shortly thereafter.
 {¶ 6} A police officer who responded to an armed robbery dispatch testified that he and his partner picked up the victim and placed him in the back seat of the zone car. Within minutes they heard that another car had located a car matching the description of the victim's car. As they stopped the car, the victim stated, "those are the guys" and then positively identified them as the assailants.
 {¶ 7} McKenzie testified and claimed to have no involvement with the robbery. He said that he had been walking home from his girlfriend's house when Palmer pulled up in the car and offered him a ride. Palmer told him that a *Page 6 
friend had given him the car. After traveling only a few blocks, they were stopped by the police. McKenzie said he did not see any clothing in the car.
 III {¶ 8} Recognizing that the trial court was in the superior position to evaluate the witnesses and evidence at trial, we cannot say that the court lost its way by finding McKenzie guilty.
 {¶ 9} There were some acknowledged inconsistencies between the testimony of the victim and other witnesses for the state. For example, the victim described McKenzie's clothing differently than other witnesses; he thought McKenzie wore his hair in braids; and he did not notice that McKenzie spoke with a heavy Jamaican accent. The court noted these inconsistencies by saying that the victim's recall of events confirmed the adage that "eyewitness testimony is often the most convincing and the most unreliable evidence." The court satisfied itself that these inconsistencies arose because of the late hour at which the robbery occurred, the poor lighting conditions, and emotional trauma the victim had been experiencing as he was robbed a gunpoint.
 {¶ 10} The court resolved the evidentiary discrepancies on the basis of Palmer's testimony. Noting that Palmer had been sentenced prior to his testimony, the court concluded that Palmer had "no reason to fabricate his testimony as to either his own or the defendant's part in the incident." The court further noted that the victim and Palmer testified consistently in other *Page 7 
important respects: three males were involved; the victim drove up asking for directions; the three males robbed the victim at gunpoint; and the victim was demanded to "give it up." The victim also accurately testified that his car had been taken and that his wallet could be found in the glove box of his car.
 {¶ 11} McKenzie, on the other hand, offered a weak alibi. He claimed to have been returning from his girlfriend's house as Palmer approached in the car, but he was unable to give the police his girlfriend's name, telephone number, or address at the time of arrest, despite testifying that they had been dating for three months and he had not only called her that evening, but had been walking home from her house. The court likely found McKenzie's version of events unbelievable.
 {¶ 12} We conclude that the court rationally analyzed the available evidence to find in the state's favor despite some inconsistencies in the testimony. The inconsistencies did not overcome those parts of the state's case for which there was compelling agreement by witnesses. The assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. *Page 8 
The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., and LARRY A. JONES, J., CONCUR. *Page 1